**Christopher L. Reive,** OSB # 833058
E-mail: chris.reive@jordanramis.com
**Harlan E. Jones,** OSB # 850549
E-mail: harlan.jones@jordanramis.com
**Aaron Brian,** OSB # 981849
E-mail: aaron.bryon@jordanramis.com
JORDAN RAMIS PC
Attorneys at Law
Two Centerpointe Dr 6th Flr
Lake Oswego OR 97035
Telephone: (503) 598-7070
Facsimile: (503) 598-7373
   Attorneys for Defendant Siltronic Corporation

FILED09 DEC '11 14:15USDC-ORP

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| SILTRONIC CORPORATION, a Delaware corporation,<br><br>            Plaintiff,<br><br>      v.<br><br>EMPLOYERS INSURANCE COMPANY OF WAUSAU, a Wisconsin corporation; GRANITE STATE INSURANCE COMPANY, a Pennsylvania corporation; CENTURY INDEMNITY COMPANY, a Pennsylvania corporation; and FIREMAN'S FUND INSURANCE COMPANY, a California corporation,<br><br>            Defendants. | Case No. CV'11-1493 ST<br><br>**COMPLAINT**<br><br>**Declaratory Judgment and Breach of Contract**<br><br>JURY TRIAL DEMANDED |

Plaintiff Siltronic Corporation, formerly known as Wacker Siltronic Corporation ("Siltronic"), asserts this complaint against defendants Employers Insurance Company of Wausau ("Wausau"), Granite State Insurance Company ("Granite State"), Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("Century Indemnity"), and Fireman's Fund Insurance Company ("Fireman's Fund") (collectively, the "Insurers") and alleges as follows:

## THE PARTIES

1.

Siltronic is incorporated under the laws of the state of Delaware, with its principal place of business in Portland, Oregon. Siltronic is engaged in the manufacture of silicon wafers for the electronics industry at its facility located at 7200 NW Front Avenue in Portland, Oregon (the "Property").

2.

Wausau is an insurance company incorporated under the laws of the state of Wisconsin, with its principal place of business in Massachusetts. Wausau is engaged in the business of selling insurance, including liability insurance, to companies and individuals. Wausau regularly transacts business in Oregon and Multnomah County, and that business is not isolated or sporadic. Nationwide Insurance Company ("Nationwide") is administering Siltronic's insurance coverage claim against Wausau.

3.

Granite State is an insurance company incorporated under the laws of the state of Pennsylvania, with its principal place of business in New York. Granite State is engaged in the business of selling insurance, including liability insurance, to companies and individuals. Granite State regularly transacts business in Oregon and Multnomah County, and that business is not isolated or sporadic. The insurance coverage claim of Siltronic against Granite State is currently being administered by Chartis Casualty Company ("Chartis").

4.

Century Indemnity is an insurance company incorporated under the laws of the state of Pennsylvania, with its principal place of business in Pennsylvania. Century Indemnity is engaged in the business of selling insurance, including liability insurance, to companies and individuals. Century Indemnity regularly transacts business in Oregon and Multnomah County,

and that business is not isolated or sporadic. With regard to Policy XBC 152145, issued to Siltronic by the Insurance Company of North America ("INA"), Century Indemnity is the successor to CCI Insurance Company, which is the successor to INA.

5.

Fireman's Fund is an insurance company incorporated under the laws of the state of California, with its principal place of business in California. Fireman's Fund is engaged in the business of selling insurance, including liability insurance, to companies and individuals. Fireman's Fund regularly transacts business in Oregon and Multnomah County, and that business is not isolated or sporadic.

## JURISDICTION AND VENUE

6.

This court has jurisdiction of this matter under 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000, exclusive of the interest and costs, and because the action is between citizens of different states.

7.

Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## GENERAL ALLEGATIONS

### The Insurance Policies

8.

Siltronic purchased liability insurance policies from the Insurers which provide, among other things, liability insurance coverage for defense costs incurred in defending against claims by third parties, including claims for property damage.

9.

The insurance policies issued to Siltronic by the defendants are as follow:

| Policy Term | Insurer | Policy Number | Type and Amount of Coverage |
| --- | --- | --- | --- |
| 8/17/78 – 1/1/80 | Wausau | 2320 00 039640 | General Liability - $1 million |
| 11/1/78 – 1/1/80 | Granite State | 6578-5751 | Umbrella Liability - $4 million |
| 1/1/80 – 81 | Wausau | 2321 00 039640 | General Liability - $1 million |
| 1/1/80 – 81 | Granite State | 6580-6886 | Umbrella Liability - $5 million |
| 1/1/80 – 81 | Fireman's Fund | XLX 1217784 | Blanket Excess - $10 million |
| 1/1/81 – 82 | Wausau | 2322 00 039640 | General Liability - $1 million |
| 1/1/81 – 82 | Granite State | 6581-8028 | Umbrella Liability - $5 million |
| 1/1/81 – 82 | Century Indemnity | XBC 152145 | Blanket Excess - $10 million |
| 1/1/82 – 83 | Wausau | 2323 00 039640 | General Liability - $1 million |
| 1/1/82 – 83 | Granite State | 6582-8987 | Umbrella Liability - $5 million |

| 1/1/82 – 83 | Fireman's Fund | XLX 1370824 | Blanket Excess - $10 million |
| 1/1/83 – 84 | Wausau | 2324 00 039640 | General Liability - $1 million |
| 1/1/83 – 84 | Granite State | 6583-0219 | Umbrella Liability - $5 million |
| 1/1/83 – 84 | Fireman's Fund | XLX 1370811 | Blanket Excess - $10 million |
| 1/1/84 – 85 | Wausau | 2325 00 039640 | General Liability - $1 million |
| 1/1/84 – 85 | Granite State | 6584-1229 | Umbrella Liability - $5 million |
| 1/1/84 – 85 | Fireman's Fund | XLX 1370769 | Blanket Excess - $10 million |
| 1/1/85 – 86 | Wausau | 2326 00 039640 | General Liability - $1 million |

Copies of excerpts of the policies described above are attached hereto and incorporated herein as **Exhibit A**, as substitutes for the actual policies, which are too voluminous to attach to this Complaint. Copies of such policies will be made available upon request.

10.

The policies described herein were issued and delivered to Siltronic at its address in Oregon, and they contain endorsements that are particular to Oregon or are required by Oregon law.

## The Wausau Policies

11.

The policies issued by Wausau to Siltronic promise to "pay on behalf of [Siltronic] all sums which [Siltronic] shall become legally obligated to pay as damages because of . . . property damage to which this insurance applies, caused by an occurrence . . . ."

12.

The policies issued by Wausau to Siltronic define "property damage" to include "physical injury to or destruction of tangible property which occurs during the policy period . . . ."

13.

The policies issued by Wausau to Siltronic define "occurrence" to mean "an accident, including continuous or repeated exposure to conditions, which results in . . . property damage neither expected nor intended from the standpoint of the insured."

14.

The policies issued by Wausau to Siltronic provide that Wausau "shall have the right and duty to defend any suit against [Siltronic] seeking damages on account of . . . property damage, even if any of the allegations of the suit are groundless, false or fraudulent . . . but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements."

15.

The policies issued by Wausau to Siltronic provide an express exception to the pollution exclusion for "sudden and accidental" releases of pollutants.

16.

The costs incurred in the defense of suits under the policies issued by Wausau to Siltronic do not erode the general liability limits of the policies. Only the payment of settlements or judgments erodes the general liability limits of the policies. Wausau is obligated to defend

Siltronic against any covered suit until "the applicable limit of the company's liability has been exhausted by payments of judgments or settlements."

17.

Until Wausau's liability has been exhausted by indemnity payments, the policies issued by Wausau to Siltronic provide coverage for covered defense costs, unlimited in amount. Defense costs are not subject to a deductible or retention.

**Granite State Policies**

18.

Umbrella liability policy numbers 6581-8028 (1/1/81 to 1/1/82), 6582-8987 (1/1/82 to 1/1/83), 6583-0219 (1/1/83 to 1/1/84), and 6584-1229 (1/1/84 to 1/1/85) issued to Siltronic by Granite State each contain a Following Form Endorsement which provides, in pertinent part that: "Notwithstanding anything contained herein to the contrary, it is hereby understood and agreed that where scheduled underlying insurance is written under terms and conditions providing greater protection or indemnity to the Assured than the terms and conditions of this policy, this insurance shall pay on behalf of the Assured upon the same terms, conditions and limitations of the applicable underlying insurance. . . ."

**DEQ and EPA Claims**

19.

Siltronic acquired the Property in August 1978. The Property is located in northwest Portland, Oregon on the southwest shoreline of the Willamette River and covers approximately 85 acres. It is zoned "heavy industrial" and surrounded on three sides by industrial properties including properties owned by Northwest Natural Gas Company ("NW Natural"), SLLI/Bayer Crop Science, ESCO Corporation, and LSS/Arkema, all of which are presently conducting environmental investigations of their respective properties. In or about December 2000, a 5 1/2-mile section of the Lower Willamette River, a portion of which is immediately adjacent to the

Property, was placed on the National Priorities List ("NPL"), also known as the Superfund List, by the United States Environmental Protection Agency ("EPA"). The Superfund study area has since been expanded to include ten (10) river miles. The Property is located adjacent to the approximate center of that section of the river now known as the Portland Harbor Superfund Site.

20.

On October 4, 2000, DEQ issued a joint Order to Siltronic and its neighbor, NW Natural, which by its terms requires them, jointly, to conduct a remedial investigation of the Property and to implement source control measures, as deemed necessary by that investigation. That Order (DEQ Order No. ECVC-NWR-00-27, hereinafter referred to as the "2000 DEQ Order") declares the following as "Findings of Fact": (a) subsurface petroleum or tar has been encountered on the Property; (b) groundwater samples collected at the Property were found to contain benzene, PAHs, cyanide, and lead at concentrations above federal drinking water maximum contaminant levels; (c) soil samples collected from geotechnical borings at the Property were found to be saturated with a black, oily viscous substance which tested positive for PAHs; and (d) groundwater samples collected at the Property were found to contain benzene and total petroleum hydrocarbons in excess of maximum contaminant levels. The 2000 DEQ Order declared as "Conclusions of Law" that: (a) the contaminants described in the Findings of Fact are "hazardous substances" under ORS 465.200(15); (b) the presence of such hazardous substances in soils, groundwater, and sediments at or near the Property is the result of a "release" into the environment under ORS 465.200(21); (c) the Property and adjacent contaminated sediments are a "facility" under ORS 465.200(12); (d) Siltronic is a "person" under ORS 465.200(20); and (e) as a current or past owner or operator of a facility, Siltronic is strictly, jointly and severably liable under ORS 465.255 and, therefore, may be required by DEQ to conduct a removal or remedial action necessary to protect public health, safety and the environment pursuant to ORS 465.260(4).

21.

On December 8, 2000, EPA issued to Siltronic a Notice of Potential Liability ("EPA Notice") stating that it deemed Siltronic a potentially responsible party ("PRP") for sediment contamination then alleged to exist in the NPL designated section of the Willamette River and that Siltronic may be ordered to perform response actions deemed necessary by EPA and/or DEQ to protect public health, welfare, or the environment. The EPA Notice also states that PRPs may be required to pay for damages to, destruction of, or loss of natural resources, including the costs of assessing such damages.

22.

On February 5, 2004, DEQ issued its Order (DEQ No. VC-NWR-03-16, hereinafter referred to as the "2004 DEQ Order") requiring Siltronic alone to perform additional remedial investigations and to conduct additional source control measures as dictated by that investigation. The 2004 DEQ Order specifically targeted for a remedial investigation the discovery of releases of trichloroethene ("TCE") and its degradation byproducts at the Property and requires Siltronic to identify and implement, if necessary, source control measures for unpermitted discharges or releases of TCE and its associated hazardous substances to the Willamette River.

23.

In September 2009, EPA, NW Natural, and Siltronic entered into an Administrative Settlement Agreement and Order on Consent for Removal Action with Respect to the "GASCO Sediments Site" ("AOC") which is located within the Portland Harbor Superfund Site. The AOC requires that Siltronic and NW Natural perform a response action investigation and design activities and to pay such response costs as may be incurred by the United States and Tribal Governments at or in connection with an area known as the GASCO Sediments Site within the boundaries of the Portland Harbor Superfund Site, as more fully described in the Statement of

Work ("SOW") attached thereto. On September 1, 2009, Siltronic and NW Natural entered into a Participation and Interim Cost Sharing Agreement in order to apportion between them, on an interim and non-binding basis, the costs of performing the work required under the AOC. This interim agreement provides that such mutual costs be paid in accord with the following formula: (a) 92.5% by NW Natural; and (b) 7.5% by Siltronic.

24.

Under the threat of suit to seek recovery of related costs by EPA, DEQ, and other PRPs with respect to the Portland Harbor Superfund Site, Siltronic has been obliged to incur significant attorneys' fees, outside consultant fees, and costs and expenses during the course of its participation in a collective effort of many other PRPs to further the ongoing investigation of the Portland Harbor Superfund Site. The majority of the fees, costs and expenses incurred by Siltronic in connection with the Property constitute "defense costs" covered by its insurance policies.

25.

Pursuant to Oregon law, the demands made on Siltronic by EPA, DEQ, and other entities identified by those agencies as PRPs for the liabilities associated with the Portland Harbor Superfund Site constitute "suits" and "lawsuits" for property damage within the meaning of Siltronic's insurance policies.

**Siltronic's Notice to Insurers of Claims**

26.

On June 23, 2003, Siltronic gave notice of the claims against it by EPA and DEQ to Wausau, its primary general liability insurance provider. A true and correct copy of this notice is attached hereto and incorporated herein as **Exhibit B**. Nationwide responded on behalf of Wausau to Siltronic's tender for insurance coverage on September 11, 2003, agreeing to participate in the defense of Siltronic, subject to a reservation of rights to deny coverage. A true

and correct copy of Nationwide's response on behalf of Wausau is attached hereto and incorporated herein as **Exhibit C**.

27.

On June 25, 2003, Siltronic gave notice of the claims against it by EPA and DEQ to Granite State and Fireman's Fund, insurers which provide Siltronic's umbrella liability and blanket excess liability coverage, respectively. A true and correct copy of this notice is attached hereto and incorporated herein as **Exhibit D**. AIG Technical Services, Inc. responded on behalf of Granite State to Siltronic's tender for insurance coverage on January 30, 2004, stating that no obligation to pay arises under the Granite State policies until the underlying liability insurance coverage has been exhausted by virtue of settlements or judgments on claims, and asserting its reservation of rights to deny coverage. On July16, 2003, Fireman's Fund responded to Siltronic's tender for insurance coverage denying coverage until such time as all applicable underlying policies have been exhausted and asserting its reservation of rights to deny coverage.

28.

On June 22, 2006, after discovery of a previously lost policy, Siltronic notified the Insurance Company of North America ("INA") of EPA's and DEQ's claims against it. A true and correct copy of this notice is attached hereto and incorporated herein as **Exhibit E**. Resolute Management, Inc. ("Resolute") responded on behalf of Century Indemnity, as successor to CCI Insurance Company, as successor to INA, to Siltronic's tender for insurance coverage on July 10, 2006 and on November 8, 2007, by providing Siltronic a copy of INA policy No. XBC 052145. Resolute wrote that no obligation to pay under the policy arises until an amount equal to the underlying coverage has been paid on behalf of the policyholder for any settlement, judgment or claim, and asserting its reservation of rights to deny coverage.

/////

/////

## Duty to Defend and/or Indemnify

### (Wausau and Granite State)

29.

Beginning in or about September 2003, Wausau, through its administrator Nationwide, began paying Siltronic's costs incurred in response to the demands referenced above. During the course of its payments and without prior notice to or general agreement from Siltronic or any other defendant herein, Nationwide segregated and accounted for such payments as being for 'defense' or paid in satisfaction of Wausau's obligation to 'indemnify.' This method of accounting for payments made was asserted by Nationwide to be in accord with the terms of the triggered Wausau primary insurance policies and with controlling Oregon statute.

30.

In or about February 2007, Wausau and Siltronic entered into an Agreement to Fund Settlement of State Claims in order to fund Siltronic's share of a partial settlement of DEQ claims for past remedial action costs incurred in connection with the Portland Harbor Superfund Site. Wausau and Siltronic agreed that the amount of Siltronic's share of the settlement ($49,920) would be allocated and applied equally, pro rata, against the policy limits of each of the individual policies issued by Wausau, and that the amount of coverage limits thereunder would be reduced therefore. A copy of the Agreement to Fund Settlement of State Claims is attached hereto and incorporated herein as **Exhibit F**.

31.

In or about June 2008, Wausau and Siltronic entered into an Agreement to Fund Interim Participation in Natural Resource Injury Assessment in order to fund Siltronic's share of the interim payment to the National Resource Trustees under the Interim Funding and Participation Agreement in the amount of $27,777.78. Wausau and Siltronic agreed that the amount of said payment would be allocated and applied equally, pro rata, against the policy limits of each of the

individual policies issued by Wausau, and that the amount of coverage limits thereunder would be reduced therefore. A copy of the Agreement to Fund Interim Participation in Natural Resource Injury Assessment is attached hereto and incorporated herein as **Exhibit G**.

32.

In September 2009, Wausau's administrator, Nationwide, declared exhaustion of the coverage limits of all Wausau primary liability insurance policies that it conceded had been triggered by Siltronic's tender and the facts referenced above. However, and in support of Wausau's claim of policy exhaustion, Nationwide declared that Wausau Policy No. 2320 00 039640, effective from 8/17/78 through 1/1/80 (the "1978-80 Policy"), is not yet triggered by Siltronic's tender and the facts referenced above. As a result, Nationwide excluded from its accounting of payments then made to date the amount of primary coverage available under the 1978-80 Policy.

33.

Siltronic's umbrella liability insurance provider, Granite State through its administrator, Chartis, has accepted Siltronic's tender for coverage, subject to Granite State's express reservation of right to contest Wausau's exhaustion claim.

34.

Chartis has since informed Siltronic that Granite State now disagrees with Nationwide's contention that the 1978 – 80 Policy has not been triggered for coverage based on the facts alleged above. Chartis further disagrees with Nationwide's accounting of certain costs Nationwide has paid and with Nationwide's declaration that all of the insurance coverage available under the Wausau primary policies has been 'exhausted.' As a result, Granite State has rejected and refused to pay certain reasonable and necessary costs and expenses incurred by Siltronic in response to demands of the EPA, DEQ and other Portland Harbor PRPs, for the

46454-38912 260339_3.DOCX\MEE/12/8/2011

reason that Granite State alleges such costs and expenses are covered and required to be paid by Wausau.

35.

In response to the actions of Granite State described in Paragraph 34, above, Siltronic tendered to Wausau, through its administrator Nationwide, Siltronic's demand for payment of the reasonable and necessary costs Siltronic has incurred and which Granite State, through its administrator Chartis, has rejected for payment. Nationwide subsequently rejected Siltronic's tender and payment demand, as described herein.

36.

Wausau through its administrator, Nationwide, has breached its duty to defend and indemnify Siltronic up to the limits of all of the Wausau primary policies listed in paragraph 9 above.

37.

In the alternative to Paragraph 36, above, Granite State through its administrator, Chartis, has breached its duty to defend and indemnify Siltronic up to the limits of all of the Granite State policies listed in paragraph 9 above.

38.

Because of the contract breaches alleged in the alternative in paragraphs 36 and 37, above, at least the following insured, reasonable and necessary costs of Siltronic's performance and participation of certain actions and activities have not been paid by either Wausau or Granite State to date:

    A.    Siltronic's obligation to fund a portion of the cost of Phase II of that certain cooperative Natural Resource Damage Assessment ("NRDA") in the amount of **$90,277.78**, which amount was paid directly by Siltronic on or about July 1, 2011.

B.	The cost of work invoiced by Siltronic's environmental consultant, Maul Foster & Alongi ("MFA"), and disallowed by Wausau and Granite State for payment, now totaling **$65,165.70**. This amount increases monthly, and includes the cost of work invoiced by MFA disallowed for payment by the above carriers. Such amounts either have been or will be paid by Siltronic, with the final amount to be proved at trial.

C.	The amount of NW Natural's invoice for 7.5% of its early removal action costs totaling **$219,116.53**, together with Siltronic's share in the amount of **$26,309.87** of EPA's oversight charges with respect to the same. This amount is expected to increase, with the final amount to be proved at trial.

D.	Siltronic's direct costs in the amount of **$450,000** incurred addressing legacy contamination as necessitated in order to protect and preserve its legal rights and interests, prior to tender of its claim to its carriers in 2003. These costs were included in Siltronic's original tender and have never been denied or paid by Wausau.

E.	Siltronic's direct expenses of not less than **$475,000** incurred as the result of its participation in covered remediation activities after tender of its claims in 2003.

39.

As a result of the above-described breaches of the duty to defend by Wausau and Granite State, Siltronic is entitled to recover the amounts that its insurers have failed to pay, together with interest at the Oregon statutory rate of 9% per annum.

**ORS 465.480**

40.

ORS 465.480 applies to Siltronic's right to payment of defense costs by its insurers, as well as Siltronic's other rights with respect to this action.

/////

/////

41.

Siltronic has given notice of the claims alleged against Wausau and Granite State to its other insurers, as required under ORS 465.480(b).

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment – All Defendants)

42.

Siltronic incorporates paragraphs 1 through 41 above as if fully set forth herein.

43.

Wausau's conduct, and that of its agent Nationwide, described above is inconsistent with the rights of Siltronic and the obligations of Wausau under the Wausau policies. Granite State's conduct, and that of its agent Chartis, described above is inconsistent with the rights of Siltronic and the obligations of Granite State under the Granite State policies. Accordingly, an actual and justiciable controversy exists between the parties regarding Wausau's and Granite State's defense and indemnification obligations under Oregon law.

44.

Pursuant to 28 U.S.C. § 2201, Siltronic requests that the Court issue a declaratory judgment declaring the rights and duties of Siltronic, Wausau, Granite State, Century Indemnity and Fireman's Fund under their respective policies.

WHEREFORE, Siltronic demands judgment in its favor against its insurers:

A. Declaring and adjudging the rights and obligations of the insurers and Siltronic under the insurance policies;

B. Requiring Wausau to pay on behalf of Siltronic or reimburse all defense costs caused by the environmental claims described herein, until such time as the limits of the Wausau policies, including the 1978 – 80 Policy, have been exhausted by the payment of settlements or judgments;

C. Requiring Granite State to pay on behalf of Siltronic or reimburse all defense costs caused by the environmental claims described herein, after the Wausau policy limits have been exhausted by the payment of settlements or judgments, and until such time as the Granite State policies have been exhausted by the payment of settlements and judgments;

D. Enjoining Wausau and Granite State from failing and refusing to pay on behalf of Siltronic all defense costs caused by the environmental claims described herein;

E. Declaring which of Wausau or Granite State is liable to Siltronic under the policies issued by them, respectively, to pay the full amount of Siltronic's reasonable and necessary costs incurred in response to the claims described in paragraphs 19 through 25, above, including but not limited to the specific amounts alleged to be owed in Paragraph 38 hereinabove;

F. Declaring which of Wausau or Granite State is liable to Siltronic under the policies issued by them, respectively, to pay the fair and reasonable rates of lawyers, consultants, and others hired to defend Siltronic, as proven by Siltronic at the trial of this matter or otherwise;

G. Declaring which of Wausau or Granite State is liable to Siltronic under the policies issued by them, respectively, to promptly pay the reasonable and necessary future fees, costs, and expenses incurred by Siltronic and submitted to them for payment through their respective agents;

H. Granting Siltronic specific performance of the Wausau and Granite State policies;

I. For costs of suits;

J. For all counsel fees, expert fees and other costs relating to the litigation of this matter; and

K. For such and other and further relief, including any appropriate equitable relief, as the Court may deem just and proper.

45.

Siltronic is entitled to the recovery of its attorneys' fees and costs herein pursuant to ORS 742.061.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract – Wausau and Granite State)

46.

Siltronic incorporates paragraphs 1 through 45 as if fully set forth herein.

47.

Siltronic has satisfied all covenants and conditions required of it under the insurance policies if any.

48.

Wausau and Granite State accepted premiums from Siltronic and issued their respective policies promising, among other things, to defend any suit against Siltronic seeking damages on account of property damage.

49.

Wausau and/or Granite State have failed to pay Siltronic's defense costs described in Paragraph 38 hereinabove.

50.

Wausau's conduct and positions, and that of its agent Nationwide, as set forth above, have no reasonable basis under the Wausau policies. Accordingly, they constitute anticipatory and actual breaches of contract by Wausau through its agent, Nationwide.

/////

/////

51.

Granite State's conduct and positions, and that of its agent Chartis, as set forth above, have no reasonable basis under the Granite State policies. Accordingly, they constitute anticipatory and actual breaches of contract by Granite State through its agent, Chartis.

52.

As a direct and proximate result of the breaches of contract by Wausau and Granite State, through their agents Nationwide and Chartis, Siltronic has been damaged in an amount in excess of **$1,325,869.80** according to proof at trial. These breaches of contract have caused, and will continue to cause, damages to Siltronic, and they materially affect Siltronic's ability to defend the claims against it with respect to the Property. Siltronic is entitled to recover all such damages plus prejudgment interest at the Oregon statutory of 9% per annum.

53.

Siltronic is entitled to recover its attorneys' fees and costs herein pursuant to ORS 742.061.

54.

Siltronic's costs of defending against the environmental claims described above are within the coverage provided by the Wausau and Granite State policies.

55.

An accident or occurrence, or personal injury, or property damage or other triggering event has taken place at the Property during the Wausau and Granite State policy periods.

WHEREFORE, Siltronic demands judgment in its favor against its insurers:

A. Awarding Siltronic money damages in an amount to be proved at trial or other determination of not less than **$1,325,869.80** according to proof at trial, plus interest at the Oregon statutory rate of nine percent (9%);

B. For costs of suit;

C.  For all counsel fees, expert fees and other costs relating to the litigation of this matter; and

D.  For such other and further relief, including any appropriate equitable relief, as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

56.

Siltronic demands trial by jury.

Dated this ___7th___ day of December, 2011.

JORDAN RAMIS PC

By: _____
CHRISTOPHER L. REIVE
OSB # 833058
Telephone: (503) 598-7070
Facsimile: (503) 598-7373
chris.reive@jordanramis.com
**Attorney(s) for Plaintiff Siltronic Corporation**