UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**SILTRONIC CORPORATION,**
a Delaware corporation,

        Plaintiff,

   v.

**EMPLOYERS INSURANCE COMPANY OF WAUSAU; and GRANITE STATE INSURANCE COMPANY,**

        Defendants.

Case No. 3:11-cv-1493-YY

**FINDINGS AND RECOMMENDATION**

YOU, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Siltronic Corporation ("Siltronic"), has filed a Motion to Require Wausau to Comply with This Court's Orders by Paying Defense Costs on Current Basis (docket #250). For the reasons discussed below, the motion should be denied.[1]

///

///

---

[1] Previously, Magistrate Judge Janice Stewart had full consent of the parties to enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). After the appointment of a new magistrate judge, the parties were given the opportunity to withdraw consent and thereafter filed a Stipulated Notice of Withdrawal of Consent to Magistrate Judge (docket #256).

1 – FINDINGS AND RECOMMENDATION

**UNDISPUTED FACTS**

In 1978, Siltronic's predecessor, Wacker Siltronic, bought real property located at 7200 NW Front Avenue ("Property") on the southwest shore of the Willamette River in a "heavy industrial" area. McCue Decl. (docket #145), ¶ 8.

Northwest Natural Gas Company ("NW Natural") owns real property adjacent to the Property. *Id.* ¶ 9. The Property and adjacent NW Natural property were once owned as a single parcel by NW Natural's predecessor, the Portland Gas and Coke Company ("GASCO"), on which it operated an oil gasification plant. *Id.*; First Amended Complaint (docket #259), Ex. B, at 8.[2] GASCO disposed of the waste generated at the plant, Manufactured Gas Product ("MGP"), in tar ponds now located on the Property from 1940–41 until 1956 when the MGP operations ceased. *Id.* Ex. B, at 9. This disposal area became known as the "GASCO Sediment Site." Burr Decl. (docket #52), Ex. 4, at 8; McCue Decl. (docket #145), ¶ 9. Before Siltronic purchased the Property, the MGP waste was covered up with fill materials, including material from the Willamette River. McCue Decl. (docket #145), ¶¶ 9–10. Siltronic first learned of these MGP disposal activities and the placement of cover-up fill materials several years after it purchased the Property. *Id.* ¶ 9.

In February 1979, Siltronic began construction of an outfall pipe for treated effluent from the wastewater treatment pipe on the Property to the river. *Id.* ¶ 11(a)–(b). The construction required excavation and removal of fill material and a limited amount of submerged sediment along the northeast border of the Property. *Id.* On May 18, 1979, the excavation and pile driving activities disturbed oily sediment containing the buried MGP, and Siltronic set up an oil boom in the river to contain surfacing oil. *Id.* ¶ 11(c)–(d) & Exs. 5–9. Siltronic deposited the dredge

---

[2] Defendants have filed Motions to Strike Siltronic Corporation's First Amended Complaint (dockets ## 262 & 269) that are still pending.

material containing the oil on the riverbank away from the river. *Id.* ¶ 11(d) & Ex. 11. Although a dredged material disposal agreement between Siltronic's predecessor, Wacker Siltronic, and the Port of Portland designated Swan Island for disposal of dredging spoil materials, the dredge material remained on the Property. *Id.* ¶ 11(f)–(g) & Ex. 10. In March 1980, Siltronic began manufacturing silicone wafers on the Property, generating trichloroethene ("TCE") waste. First Amended Complaint, Ex. D, at 3.

On October 4, 2000, DEQ issued an Order ("2000 DEQ Order") requiring Siltronic to "perform a Remedial Investigation" approved by DEQ in order "to determine the nature and extent of releases of hazardous substances to Willamette River sediments" and "to develop and implement source control measures to address such releases, if necessary." *Id.* Ex. B, at 8, 12. In order to comply, Siltronic hired the environmental consulting firm of Maul Foster and Alongi, Inc. ("Maul Foster") (docket #97, p. 4).

On February 5, 2004, DEQ issued another Order ("2004 DEQ Order") requiring Siltronic to perform a "remedial investigation of releases of trichloroethene (TCE) and its degradation byproducts . . . and to identify and implement, if necessary, source control measures for unpermitted discharges or releases of TCE." Burr Decl. (docket #52), Ex. 3, at 1. The focus of work under the 2000 DEQ Order had not included TCE, which was detected in the soil below the ground surface in July 2003. *Id.* Ex. 3, at 2. On February 17, 2004, Siltronic responded to the 2004 DEQ Order with its Notice of Intent to Comply. Barber Decl. (docket #57), Ex. B. Siltronic agreed to "perform such Remedial Investigation and Source Control Measures and additional measures as set forth [in the 2004 DEQ Order] or are otherwise required to identify, assess and implement source control measures, as appropriate, with respect to TCE and the

hazardous substances associated with TCE as may be located on the Siltronic Property." *Id.* Ex. B, at 1.

## **POLICIES**

Between 1978 and 1986, defendant Employers Insurance Company of Wausau ("Wausau"), issued seven annual Comprehensive General Liability Policies to Siltronic. First Amended Complaint ¶ 7. Wausau issued a policy to Siltronic for the period from August 17, 1978, through August 17, 1979, and from August 17, 1979, through January 1, 1980 (the "1978-79 Policy"). *Id.* ¶ 13 & Ex. A, at 6. The 1978-79 Policy provides $1 million in indemnity liability and requires Wausau to defend Siltronic until the $1 million indemnity limit is exhausted. *Id.*

The six annual policies covering the years 1980 through 1986 provide $1 million in indemnity liability, for a total of $6 million of coverage. First Amended Complaint ¶ 7. These policies require Wausau to defend Siltronic until the $6 million indemnity limit is exhausted, which then triggers defendant Granite State Insurance Company's ("Granite State") obligations under its umbrella policies.

In September 2003, Siltronic tendered to Wausau "claims for defense and indemnity arising from claims and losses [Siltronic] has and will sustain investigating and remediating hazardous wastes contamination soil and groundwater at the Property," and Wausau began paying Siltronic's costs incurred in complying with the 2000 DEQ Order. *Id.* ¶ 37 & Ex. B, at 1.

Wausau defended Siltronic on various environmental claims until September 2009 when it concluded that the $6 million indemnity limits of the six policies covering the time period from 1980–86 were exhausted by paying $6,309,438.29 in indemnity costs; and, therefore, it refused

4 – FINDINGS AND RECOMMENDATION

to pay any additional defense costs. *Id.* ¶ 40. Wausau calculated that it had also paid $7,699,837.00 in defense costs. *Id.* ¶ 15.

In November 2009, Granite State accepted Siltronic's tender for coverage subject to an express reservation of its right to contest Wausau's exhaustion claim. *Id.* ¶ 41. At some point Granite State determined that Wausau had terminated coverage prematurely after mischaracterizing defense payments as indemnity payments and continues to dispute whether the indemnity coverage of the six policies for the years 1980–86, totaling $6 million, is exhausted. *See* Granite State Insurance Company's Memorandum in Support of Motion for Partial Summary Judgment Regarding Wausau's Characterization of Costs (docket #73), at 2.

At the same time, Wausau declared that the 1978-79 Policy had not been triggered by Siltronic's tender and the EPA Orders. *Id.* ¶ 40. As a result, Wausau excluded from its accounting of payments then made to date the amount of primary coverage available under the 1978-79 policies. *Id.*

## FINDINGS

Siltronic moves the court to enforce two of its previous orders in this case, Order # 194 and Order # 237, and require Wausau to immediately reimburse it for expenses that it incurred as a result of the 2000 and 2004 DEQ Orders. Siltronic's arguments as they pertain to each order are addressed in turn below.

### I.    Order #194

In Order #194, the court granted in part and denied in part Siltronic's Second Motion for Partial Summary Judgment (docket #141) on the limited issue of whether Wausau has a

continuing duty to defend Siltronic under the 1978-79 Policy.[3]  The court found that legacy MGP contamination by NW Natural caused covered property damage in 1979 (docket #194, at 9) and ruled as follows:

- Granted summary judgment as to Wausau's duty under the 1978-79 Policy to defend claims for damage arising from contamination from legacy MGP contamination (and other contamination covered by the DEQ and EPA actions) on the Property during the policy period;

- Denied summary judgment as to any obligation by Wausau under the 1978-79 Policy to pay defense costs incurred by Siltronic prior to its tender of defense on June 23, 2003; and

- Deferred ruling as to whether Wausau has breached its duty to defend under the 1978-79 Policy after the tender of defense on June 23, 2003.

Siltronic contends that pursuant to Order #194, the court must compel Wausau to immediately pay Siltronic:

- $90,377.78, plus interest on this amount since the date of first tender, which has been incurred by Siltronic as an NRDA Phase 1 make-up payment and which Wausau has refused to pay.

- $141,647.06 to reimburse Siltronic for fees incurred for work performed by its defense counsel's environmental consulting firm, Maul Foster.  Granite State has

---

[3] The Second Amended Opinion and Order (docket #194) replaced the prior rulings on Siltronic's motion.  The court initially ruled on Siltronic's motion in an Opinion and Order dated October 28, 2014 (docket #154).  After Siltronic moved for clarification (docket #156), the court issued an Amended Opinion and Order on January 14, 2015 (docket #162), followed by a minute order correcting errors on February 9, 2015 (docket #164).  To generate a ruling that encompassed that minute order and also clarified some factual issues, Siltronic filed a Motion for Reconsideration (docket #185), which was granted (docket #193).

> declined to pay these costs asserting that they fall within Wausau's existing defense obligation.

- $66,033.88 to reimburse Siltronic for fees incurred for work performed by its defense counsel's environmental consulting firm, Maul Foster, and previously disallowed by Granite State as falling within Wausau's existing defense obligation.

A.     **$90,277.78 NRDA Phase 1 Make-Up Payment**

Siltronic asks the court ro require Wausau to immediately pay Siltronic $90.277.78, plus interest, which Siltronic incurred by participating in the Interim Funding and Participation Agreement ("Interim FPA") with other potentially responsible parties ("PRP") and the Natural Resources Trustees ("NRT") (consisting of several government agencies and Native American tribes). After the NRT asserted that Siltronic and the other PRPs were liable for natural-resource damages in the Portland Harbor Superfund Site (First Amended Complaint ¶ 25), the objective of the Interim FPA was to implement an Injury Assessment Plan ("NRDA") for the extent of the damages. Moore Decl. (docket #114), ¶ 13; Gladstone Decl. (docket #76), ¶ 3, Ex. 1. The PRPs agreed to fund the Interim FPA with no admission of liability or responsibility and to subsequently reallocate costs between them based on ultimate liability. Gladstone Decl., Ex. 1, at 1.

In 2010, Siltronic paid $90,277.78 as its allocated share of the funding for Phase 2 of the NRDA for which it seeks reimbursement from its insurers. Under this Phase 2 agreement, Siltronic was required to pay $324,790.01, but of that sum, $90,277.78[4] was allocated to payment of Phase 1 costs that it previously opted not to fund ("Phase 1 make-up payment"). Campagne Decl. (docket #203), Ex. 9, at 2 & Ex. 14, at 3. Because Wausau believes that it had

---
[4] This figure was rounded to $90,278.00 for purposes of this motion.

7 – FINDINGS AND RECOMMENDATION

exhausted its indemnity obligation under its policies at the time the expense was incurred, it has not reimbursed Siltronic for that payment.

Siltronic argues that because the court held in Order #194 that Wausau has a duty to defend Siltronic under its first policy, the 1978-79 Policy, Wausau should be required to reimburse Siltronic for incurred defense costs. The court previously ruled that this $90.277.78 expense must necessarily be characterized as a defense cost under the rebuttable presumptions of ORS 465.480(7)[5] for categorizing environmental expenditures by insurers. Opinion and Order (docket #237), at 12–18. Siltronic reasons that the court should compel payment having already declared both that this cost is a defense cost and that Wausau has an existing duty to defend Siltronic under the 1978-79 Policy.

Siltronic, however, overstates the effect of Order #194. The court did rule in Order #194 that Wausau had a duty to defend Siltronic under the 1978-79 Policy. That duty extends to defense costs not covered by the policy under the "complete defense" rule:

> Under Oregon law, even if some allegations involve conduct not covered by the policy, the duty to defend arises "if certain allegations of the complaint, without amendment, could impose liability for conduct covered by the policy." *Ledford*, 319 Or. at 400. This "complete defense" rule does not permit an insurer to pay defense costs only for covered claims and require the insured to defend uncovered claims in the same lawsuit. Only exhaustion of the policy limits or elimination of the covered claims extinguishes an insurer's duty to defend. *See City of Medford v.*

---

[5] (a) There is a rebuttable presumption that the costs of *preliminary assessments, remedial investigations, risk assessments or other necessary investigation*, as those terms are defined by rule by the Department of Environmental Quality, are *defense costs* payable by the insurer, subject to the provisions of the applicable general liability insurance policy or policies.

(b) There is a rebuttable presumption that payment of the costs of *removal actions or feasibility studies*, as those terms are defined by rule by the Department of Environmental Quality, are *indemnity costs* and reduce the insurer's applicable limit of liability on the insurer's indemnity obligations, subject to the provisions of the applicable general liability insurance policy or policies.

ORS 465.480(7) (emphasis added).

8 – FINDINGS AND RECOMMENDATION

> *Argonaut Ins. Grp.*, No. 1:06-CV-3098-PA, 2012 WL 2367184, at *1 (D. Or. June 21, 2012) ("when a judgment eliminates all covered claims against the insured, and the dismissal of the covered claims is not appealed, the insurer no longer has a duty to defend"). *But see Klamath Pac. Corp. v. Reliance Ins. Co.*, 151 Or App 405, 418, 950 P2d 909, 916 (1997) *opinion adhered to as modified on reconsideration*, 152 Or App 738, 955 P2d 340 (1998) ("An intermediate order from a trial court dismissing a claim is not a final resolution of that claim.").
>
> Because the Cost Sharing Agreement is only an interim agreement and does not permanently settle issues of Siltronic's indemnity for MGP legacy contamination, it does not stay, terminate, or otherwise discharge Siltronic's duty to defend. As long as Siltronic is exposed to potential liability for legacy MGP contamination, Wausau has a duty to defend Siltronic under the 1978-79 Policy in order to comply with the 2000 DEQ Order and 2000 EPA Notice with respect to all potential contaminants on the Property. Wausau's duty to defend Siltronic terminates only when all claims covered by the 1978-79 Policy related to MPG[6] are settled, dismissed, or otherwise reach final resolution, or when the $1 million indemnity limit of the 1978-79 Policy is exhausted.

Order #194, at 14–15. However, the court did not rule that Wausau must pay those defense costs under its duty to defend arising from the 1978-79 Policy. Compelling payment or reimbursement of defense costs requires additional, prerequisite findings on other issues—issues that the parties have not yet presented to this court.

The first of those issues is whether Siltronic has breached its duty to defend. In Order #194, in addition to finding that Wausau had a duty to defend under the 1978-79 Policy, the court explicitly deferred ruling on the issue of whether Wausau had breached its duty to defend under the 1978-79 Policy by refusing to pay for defense costs. At that time, Siltronic was not seeking a declaration as to what amount it was entitled to recover from Wausau as unreimbursed defense expenses, but only sought an order that the duty had been triggered. *Id.* at 15–16. Such

---

[6] Property damage caused by contaminants other than TCE and MPG could trigger coverage under the 1978-79 Policy if it occurred during that one-year policy period. There is no such evidence in the record at this time.

9 – FINDINGS AND RECOMMENDATION

a determination might seem like a formality,[7] but the court cannot grant Siltronic's request without it. Without a finding of breach—or for that matter, a finding that Wausau must pay any specific expense incurred by Siltronic in that prior Order—there is nothing for the court to enforce. Doing so would require reading into Order #194 a meaning that the court did not intend and explicitly omitted.

The second issue is whether the defense costs for which Siltronic seeks reimbursement are reasonable and necessary. The court can only compel payment of reasonable and necessary defense costs. "A breach of the duty to defend makes the insurer liable for the reasonable and necessary costs of the defense." *Greenbrier Companies, Inc. v. Am. Dynasty Surplus Lines Ins. Co.*, No. CIV. 07-1445-KI, 2008 WL 3887643, at *4 (D. Or. Aug. 21, 2008) (citing *Mutual of Enumclaw Ins. Co. v. Gass*, 100 Or. App. 424, 428, 786 P.2d 749, 751 (1999); *N.W. Pump & Equip. Co. v. Am. States Ins. Co.*, 144 Or. App. 222, 230, 925 P.2d 1241, 1245 (1996)). Therefore, before compelling Wausau to pay $90,277.78 in NRDA costs, the court must determine whether the expense was reasonable and necessary to avoid or at least minimize Siltronic's liability. Siltronic has not asked the court to decide this issue and none of the parties has argued the point or presented evidence in their favor. It will undoubtedly be argued at some point in this case but until then the court cannot compel Wausau to pay a defense expense.

---

[7] Deciding the issue of breach is also legally relevant because it potentially impacts the court's analysis with regard to the recuperation of costs:

> Generally, the insured carries the burden of proving the amount of costs incurred in defending an action. Where the insurer breaches its duty to defend, however, the insured must only carry the burden of proof on the existence and amount of the expenses, which are then presumed to be reasonable and necessary as defense costs, and the insurer has the burden to prove that they are unreasonable or unnecessary. To meet the burden of proof on the existence and amount of expenses, [the insured] must show: (1) that the costs and fees sought are associated with actions conducted within the temporal limits of Travelers' duty to defend, i.e., between tender of the defense and conclusion of the action; (2) the actions taken amount to a reasonable and necessary effort to avoid or at least minimize liability; and (3) the actions taken are reasonable and necessary for that purpose.

*Kla-Tencor Corp. v. Travelers Indem. Co. of Ill.*, No. C-02-05641 RMW, 2004 WL 1737297, at *4 (N.D. Cal. Aug. 4, 2004) (citations omitted); *see also Ash Grove Cement Co. v. Liberty Mut. Ins. Co.*, No. 3:09-CV-00239-HZ, 2013 WL 4012708, at *8 (D. Or. Aug. 5, 2013), *aff'd*, 649 F. App'x 585 (9th Cir. 2016) (adopting the same test).

10 – FINDINGS AND RECOMMENDATION

B.     **Maul Foster Expenses**

Siltronic next asks the court to require Wausau to immediately reimburse Siltronic for fees incurred for work performed by its defense counsel's environmental consulting firm, Maul Foster, totaling $207,680.94.  The court has previously classified other Maul Foster invoices as defense costs under the rebuttable presumptions of ORS 465.480(7).  Specifically, in an Opinion and Order dated March 7, 2014 (docket #132), the court ruled that Maul Foster's work on an Outfall Backfill Evaluation Report and a Stormwater Control Evaluation Report were defense expenses.  The reports investigated potential TCE contamination in the bedding material surrounding the outfall pipe trenches, as well as in the stormwater drains and trenches (docket #132, at 7), and therefore was presumed a remedial investigation and defense cost.

Siltronic now argues that because these new Maul Foster fees (totaling $207,680.94) derive from remedial investigation work, the court must recognize them as defense costs.  The only evidence produced in support is Granite State's description of the fees contained in letters to Siltronic declining to pay or reimburse these fees.  *See* Burr Decl. (docket #252), ¶¶ 4–6; Ex. 3, at 3; Ex. 4; Ex.. 5.

On closer look, the categories of these fees are more complicated than Siltronic lets on. For example, the second lump sum of Maul Foster fees that Siltronic presents for reimbursement in this motion, totaling $66,033.88, is comprised of more than 50 invoices labeled as various "activities."  *Id.* ¶ 4 & Ex. 3, at 3.  Some of these invoices are labeled "Remedial Investigation," while others are identified as "Feasibility Study" or "Source Area Bioremed."  *Id.*  The same is true for the other lump sum of Maul Foster fees presented in this motion, totaling $141,647.06. This figure is the sum of several deductions Grantie State made from Maul Foster invoices that it otherwise approved and reimbursed.  *Id.* ¶¶ 5-6 & Exs. 4–5.  Those deductions also were given

11 – FINDINGS AND RECOMMENDATION

labels other than remedial investigation, such as "Early Action Support" and "Allocation Support." *Id.* Ex. 4, at 5.

As discussed above, simply identifying an item as a defense costs cannot compel payment without findings of breach and that the costs are reasonable and necessary. Morever, Granite State's independent classification of these costs has no bearing on the legal nature of these fees. Granite State made this very argument when it challenged Wausau's accounting of costs that led to the determination that Wausau's 1980-86 policy limits had been exhausted. *See* Granite State Insurance Company's Memorandum in Support of Motion for Partial Summary Judgment Regarding Wausau's Characterization of Costs (docket #73), at 6.

Instead, the proper category of costs must be determined according to the substance of the underlying work performed by Maul Foster, not the label assigned by the insurer. *See Endicott Johnson Corp. v. Liberty Mut. Ins. Co.*, 928 F. Supp. 176, 184, 184 n. 2 (N.D.N.Y. 1996); *see* Opinion and Order (docket #237) at 6 (adopting the *Endicott* approach as "consistent with Oregon's statutory presumptions"). Under the Oregon statute, "remedial investigations" are presumed defense costs. ORS 465.480(7)(a). However, under the *Endicott* inquiry, the Maul Foster activities will be defense costs only if the expense is primarily attributable to "address[ing] the sources and extent of the contamination, whether environmental damage can be mitigated by control the source, or whether addition action is necessary because of migration of contamination from the site." *Endicott*, 928 F. Supp. at 184. If, instead, Maul Foster's work primarily is attributable to "plans for selecting and implementing the remediation alternative for the site," those consulting fees must be treated as indemnity payments. *Id.* Accurate characterization of environmental consulting fees according to *Endicott* and the Oregon statutory presumptions will require the parties to submit evidence detailing the substance of the work for

which Siltronic paid and now seeks reimbursement. That factual determination is beyond the scope of this motion.

## II.  Order #237

The remainder of Siltronic's motion pertains to its efforts to seek reimbursement for "independent counsel" fees under ORS 465.483 pursuant to the court's ruling in Order #237, dated March 31, 2016. In the relevant part of that order, the court ruled that Siltronic is entitled to select "independent counsel" at Wausau's expense. *See* Order, dated June 10, 2016 (docket #248) (restating ruling from Order #237). Relying on that ruling, Siltronic now asks the court to:

- Require Wausau to immediately reimburse Siltronic for independent counsel fees incurred from June, 2013 to April 22, 2016. Siltronic has demanded reimbursement of such fees and, to date, these costs remain unpaid.

- Alternatively, and only in the event that Wausau disputes the amount demanded (not its obligation to reimburse Siltronic for those fees), Siltronic asks this court adopt a procedure to resolve disputes as to the sum Siltronic is requesting to hold Wausau accountable for meeting its ongoing defense obligations by paying past independent counsel fees as ordered by the court.

- Require Wausau to promptly reimburse Siltronic on demand for all future independent counsel fees as they are incurred within thirty (30) days from the date such demand for payment by Siltronic.

The "independent counsel" provision of ORS 465.483, passed by the Oregon Legislature as SB 814, applies to all environmental claims that were pending on June 10, 2013, the date of the provision's enactment. SB 814 § 8(1), 77th Leg. (Or. 2003), provides as follows:

> (1) If the provisions of a general liability insurance policy impose a duty to defend upon an insurer, and the insurer has undertaken the defense of an environmental claim on behalf of an insured under a reservation of rights,

13 – FINDINGS AND RECOMMENDATION

> or if the insured has potential liability for the environmental claim in excess of the limits of the general liability insurance policy, the insurer shall provide independent counsel to defend the insured who shall represent only the insured and not the insurer.
>
> (2)(a)(A) Independent counsel retained by the insurer to defend the insured under the provisions of this section must be experienced in handling the type and complexity of the environmental claim at issue.

After passage of SB 814, Siltronic sent a letter to Wausau dated November 26, 2013, stating that Siltronic had selected the law firm of Jordan Ramis PC ("Jordan Ramis") as its independent counsel and demanding that Wausau reimburse Siltronic for its fees incurred since June 10, 2013.  Barber Decl. (docket #190), Ex. A.  Since then, Siltronic has continued to send letters to Wausau repeating this request.  *See id.*, Ex. B–D; Burr Decl. (docket #252), Ex. 2.

Previously, on February 23, 2004, Christopher Reive of Jordan Ramis had been informed that Wausau had engaged the law firm of Davis Rothwell to defend Siltronic.  Reive Decl. (docket #207), ¶ 8 & Ex. 6, at 3.  Nevertheless, Mr. Reive has acted and continues to act as Siltronic's counsel since at least 2003, advising Siltronic on a multitude of issues involving the Portland Harbor Superfund Site, including insurance coverage issues.  Barber Decl. (docket #190), Ex. D; Moore Decl. (docket #191), ¶ 8.[8]

On September 1, 2015, Wausau filed a Motion for Partial Summary Judgment (docket #190), in part seeking an order that it was not "required by ORS 465.483 to pay the fees of two sets of defense counsel for Siltronic, one retained by Wausau and one retained by Siltronic."  Opinion and Order (docket #237), dated March 31, 2016, at 3.  Based on an interpretation of the text and context of ORS 465.483, as well as the legislative history of SB 814, the court denied that motion.  *Id.* at 33.  In doing so, the court found that "the Oregon legislature did not intend

---

[8] A more detailed recitation of the undisputed facts relevant to the dispute over reimbursement of independent counsel fees was included in Opinion and Order dated March 31, 2016 (docket 237), at 22–24.

for the insured to accept defense counsel selected by the insurer under a reservation of rights, but to select its own 'independent counsel' who will be compensated by the insurer" and therefore, "Wausau is obligated to pay some or all of the attorney fees incurred by Mr. Reive since June 2013 to protect Siltronic's interest adverse to Wausau on coverage issues." *Id.* at 32.  Relying on these findings in Order #237, Siltronic now asks the court to compel Wausau to pay Mr. Reive's attorney's fees incurred between June 2013 and April 22, 2016.

However, the court's past findings regarding Wausau's obligation under ORS 465.483 do not necessarily encompass all of Mr. Reive's legal fees.  In order for the court to accurately compel payment, Siltronic must submit evidence explaining the nature of work underlying the fees.  In an Order dated June 10, 2016 (docket #248), the court granted Wausau's request to clarify its statutory responsibility and found that "Wausau's obligation to pay the fees of independent counsel only extends to fees incurred in connection with the defense of the underlying environmental action and not fees incurred to litigate coverage disputes."  Because Mr. Reive has handled both Siltronic's defense and coverage legal work over the years, it is not clear whether the fees for which Siltronic now seeks reimbursement are for coverage or defense work or both.  Because Wausau must pay only fees for legal defense work, the court must identify which, if any, of Mr. Reive's fees were incurred in defending Siltronic in the EPA and DEQ claims.  This is a factual determination that must precede any order compelling payment.

On page 9 of its opposition brief (docket #255), Wausau argues that it has no obligation to provide "independent counsel" under its 1980-86 policies, which were exhausted in 2009 before the passage of SB 814 in 2013.  The court has made no finding that this obligation to provide "independent counsel" arises under an insurance policy or is therefore subject to the

terms and limitations of those policies. Instead, Wausau's obligation arises under Oregon statutory authority codified in ORS 465.483.

In the alternative to Wausau immediately reimbursing Siltronic's independent attorney fees incurred between June 2013 and April 22, 2016, Siltronic requests that the court devise a procedure to resolve disputes over independent counsel fees. Motion for Partial Summary Judgment (docket #190), at 4. At the hearing, Siltronic's counsel suggested the court appoint a special master to preside over disputes regarding defense costs. Siltronic reasoned that a special master would be able to issue decisions more quickly than the court and to relieve court resources. Wausau and Granite State did not state their position on a special master appointment.

The court foresees several problems with this proposal, the most troublesome of which is that potential decisions by a special master could be inconsistent with the court's previous legal findings. For example, the court previously ruled that certain costs are defense or indemnity costs under the rebuttable presumptions of ORS 465.480(7), and adopted an analysis for doing so. A special master resolving disputes over defense costs will be forced to decide the characterization of those costs and may do so in a way that is inconsistent with the court's prior rulings. For these reason, the court should deny Siltronic's request for appointment of a special master.

## **RECOMMENDATION**

For the reasons stated, Siltronic's Motion to Comply (docket #250), should be DENIED.

///

///

///

16 – FINDINGS AND RECOMMENDATION

**SCHEDULING ORDER**

These Findings and Recommendation will be referred to a district judge. Objections, if any, are due Monday, December 05, 2016. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

**NOTICE**

This Findings and Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED November 14, 2016.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

17 – FINDINGS AND RECOMMENDATION